(119 So. 511)

## COULLIETTE v. STATE. (4 Div. 428.)

Court of Appeals of Alabama. Dec. 18, 1928.

Rehearing Stricken Jan. 8, 1929.

Farmer, Merrill & Farmer, of Dothan, for appellant.

Charlie C. McCall, Atty. Gen., for the State. Brief did not reach the Reporter.

RICE, J. Defendant was a farmer. One Olin Hall was hired by him as a wage hand. In the forenoon of the day of the killing, Olin was working in the field, when defendant called to him several times. Olin went to defendant and told him he did not like to be called like that "because it made me (him) feel like he didn't think I (Olin) was more than a negro." Olin also stated to defendant at that time that some one had told him he would not be able to get along with the defendant. Thereupon defendant replied that any one who said that was a liar, of a most colorful sort. (We will not repeat the repulsive language shown in the record.) Olin then told defendant that his brother, Bee Hall, was the one who told him he could not get along with defendant, and that if defendant repeated what he said he (Olin) would do his best to "bust him open." Defendant said Olin could quit, and Olin did quit. Defendant then apologized, but it was agreed that Olin should quit and that they would have a settlement that night. This, as nearly as we can gather it from the record, was the genesis of the whole trouble.

Thereafter, Olin told his brother Bee what defendant had said, and Bee went with him to defendant's house that afternoon. A settlement was reached between Olin and defendant, after which Bee interposed some remarks to the effect that he was not going to see Olin unfairly treated, and, according to the version of the state's witness, said that if defendant repeated what he had said in the field that morning "he (Bee) would squinch his (defendant's) other eye." Thereupon, still pursuing the state's theory, defendant got up and went after Bee with his axe. Bee had run some 19 steps from the porch (where defendant was sitting while the settlement was being made), in the direction of the woodpile, when defendant overtook him and struck him in the neck with the axe, severing the jugular vein, from which wound Bee died 30 minutes later.

The defendant's theory was that, as defendant sat on the porch, Bee not only made the mentioned threat—if the opprobrious language were repeated—but invited defendant to go down the road with him. Defendant declined, and went over to the woodpile and started chopping wood. Bee called him a coward, and both the brothers advanced on him, Olin with a drawn hoe, and Bee with his hand in his pocket in threatening fashion. Defendant struck as Bee advanced on him.

We have thus stated the conflicting theories of the occurrence. Under the one, defendant, suddenly angered by the words of the deceased, made the murderous attack. Under the other, he struck to repel an assault upon himself. Under the one, the deadly blow was administered while both parties were in flight. Under the other, it was administered while defendant stood at the woodpile and deceased walked toward him.

In this state of the evidence, a very material inquiry was whether or not the parties were running. There was direct testimony on this issue; conflicting, as we have shown. There was evidence of the presence of tracks leading from the porch (where defendant was sitting while the settlement with Olin Hall was being made) to the woodpile, and in another direction, in which Olin claims he ran, and also at the point where deceased fell. State's witness Bradshaw testified to having seen the deceased on the ground, after the difficulty, and to having seen some tracks leading from the porch steps. He was asked by the solicitor: "Is it your judgment that whoever made those tracks were running?" Over defendant's objection, the witness was permitted to answer: "Yes, sir." Exception was duly reserved, and motion made to exclude the answer of the witness. Exception was likewise reserved to the action of the

650

court in overruling this motion. The rulings noted constitute prejudicial error. Whether the tracks were "running tracks" was one of the very facts for the jury to determine. It was for the witness to describe the tracks, and for the jury to draw the conclusion. Hodge v. State, 97 Ala. 37, 12 So. 164, 38 Am. St. Rep. 145; Pope v State, 174 Ala. 63, 57 So. 245; Pope v. State, 181 Ala. 19, 61 So. 263; 3 Wigmore on Ev. § 1929.

Other questions presented are not likely to arise on another trial. For that reason a discussion of them is pretermitted.

Reversed and remanded.